In Equity. — The plaintiff's testator Hamlin and the defendant, on the 14th of August, 1792, entered into articles of agreement signed and sealed by each party by which it was agreed to make an exchange of lands. The plaintiff agreed on his part to make the defendant a conveyance to 250 acres of land, which he owned, and upon which the defendant then lived, by a certain day. The defendant on his part agreed to give Hamlin for the above tract, 200 acres of land which he claimed adjoining Rogersville, and upon which Amis lived. This land was to be conveyed to Hamlin, on or before the month of February, 1794, but it was provided that if the defendant should not recover the land of Amis, so as to be able to convey; then he was to pay 200l. Virginia currency, or negroes of that value in lieu of the land; and also to account for rent from that time.
The defendant filed a bill in equity against Amis in this court, for the recovery of the 200 acres, which upon hearing was dismissed at March term 1801. On the 22d of August, 1801, this property then, and having been in the possession of Amis, was sold at sheriff's sale, as the property of Berry, for $306. The tract on which Berry lived, having never been conveyed by Hamlin, was also sold as Berry's property on the 15th of August, 1801.
After the expiration of the time within which Hamlin was to convey to the defendant, he brought suit at law against Hamlin, upon the article of agreement, and recovered judgment for $2,000, at September term, 1801. The plaintiff filed this bill, stating that her testator had received 50l. Virginia currency, on account of rent, that the defendant had failed to convey the land as agreed, or pay any part of the 200l. in lieu of it, that he was now, and for some time past had been perfectly insolvent, and incapable of complying with his part of the contract; upon this statement, the plaintiff prayed that a perpetual injunction might be granted upon her refunding the 50l. *Page 40 
which had been received for rent with the interest.
The answer of the defendant admits the contract as stated, but denies that his bill in this court against Amis was dismissed upon the merits, but abated; admits that he never conveyed the 200 acres to the plaintiff nor paid any thing in lieu of it; and that he paid 53l. on account of the rent.
Thomas Amis, the father, sold the land to his son John, and put him in possession of it. John sold it to Richard Mitchell, and, in order to quiet Mitchell in his purchase, Amis the younger purchased of the plaintiff his right to the 200 acres of land for the sum of 250l. in the month of February, 1797. The answer further states, that the sheriff's sale of the 200 acres cannot affect the claim of the plaintiff to it for two reasons. 1st, because the executions were irregular, and the sale void in consequence of the irregularity. 2d, having sold to the plaintiff, he was but a trustee; no sheriff's sale ought to affect the interest of the cestui quetrust.
An issue of fact was referred to a jury, for the purpose of ascertaining the yearly value of the rent for the 200 acres, who found it $100 a year from February, 1794, until the determination of Berry's suit against Amis, making seven years. Upon the filing of the answer, the injunction of the plaintiff for the amount of the rent received had been dissolved at the last term and the money paid.
The evidence introduced, showed a sheriff's deed for the 200 acres, dated the 6th November, 1801. A sheriff's deed for Berry's right to the 250 acres, dated September 1, 1801. A deed from the defendant to John Berry, for the 200 acre tract, dated February the 2d, 1801. Copies of a fi. fa. against the defendant with an alias
and pluries were produced, with the returns of the sheriff, that no property could be found.
William Payne, a witness, says that the defendant left the county of Hawkins, within this district, *Page 41 
in which he lived, and went to Price's settlement in Kentucky, from whence his bail brought him, and had him put into jail, in Grainger county; and that he was commonly reputed to be insolvent.
The Court must act upon the contracts of men as made; they cannot make or modify those contracts. *Page 44 
If the Constitution had not prohibited the legislature from passing any law, impairing the obligation of contracts, I should think such acts unwise, as being bottomed on unsound principles; I have no doubt of the sense in which it is used in the Constitution, and upon that ground this court ought not to do any thing, which may impair the force or obligation of a contract. This being a constitutional objection it may be necessary to consider the strength of it. In what does the obligation of a contract consist? surely it derives its obligatory force from being mutual, and that each party shall be obliged to do what was contracted to be done. Where a consideration is the ground of a contract, that consideration should be executed, so as to make it obligatory on the other party in this court.
This court has always interfered where the contract has lost its force; when the ground upon which it rested was removed. Where the contract is mutual, and its obligatory force continues to exist, this court will act on that basis, but when its obligation is lost by adventitious circumstances, this court will so consider it and act accordingly.
It has been contended that this article contains independent and mutual covenants, that it has been so decided, that this court cannot interpose, but must leave the parties to their remedies at law upon the independency of the covenant; and upon this principle that the defendant might have obtained a decree for a specific performance against the plaintiff, without showing a performance on his part. This is not correct as it strikes me. This argument is predicated upon a supposition that the covenant on the part of the defendant was all the plaintiff contracted for; it will not bear the test of examination in a court of equity, which considers the substance and not the form of contracts. In the consideration of this court, it were more proper to view the covenant on the part of the defendant, as being entered into, on account of its being the mean of attaining the substance of the contract, the conveyance of the land, c., and not as an actual conveyance or *Page 45 
performance. It is this which this court will ever keep in its eye.
It is said, that this court cannot interpose, for in doing this, they must set aside the contract which they cannot do on account of adventitious circumstances where it was fair in its origin. It appears to me that a court of equity cannot set aside a contract under these circumstances, but they can and have interposed upon another ground, that the contract, to be obligatory, ought to be mutual, when it loses this reciprocity it loses its obligatory force.
In principle no difference can exist between an application to this court for a perpetual injunction and for a specific performance. Courts of equity seldom think themselves authorized to decree a specific performance, unless in cases where damages could be recovered at law. If the defendant is entitled to damages from the plaintiff for not performing his covenant, he would in the view of this court be entitled to a specific performance, the land itself; and if not entitled to that, the defendant should not possess himself of the damages found by the jury, which is the value of the land, and its substitute. In equity, justice, and conscience, there is not any distinction.
But performance on the part of the defendant by inference is insisted on. The answer states that the plaintiff sold his claim to John Amis for 250l. which we must take as true, not having been disproved.
For my own part, I cannot consider any act of the plaintiff, as being equivalent to a performance on the part of the defendant; unless it were acts of the plaintiff which would incapacitate the defendant from performing. Any sale which the plaintiff could make to Amis ought not to exonerate the defendant from the performance of his contract. It should appear that he did what he contracted to do; convey the land or pay the value of it; a contract between third persons, ought not to affect this; if this were the case, nothing would be more common in courts of *Page 46 
justice than to see the investigation of one cause involve in its vortex ten or a dozen, or all contracts which could be made to bear any relation to the matter in dispute. If the plaintiff sold to Amis, the most favorable light in which it can be viewed for the defendant is, that it placed Amis in the shoes of the plaintiff as to the defendant. If so, the defendant ought to show a conveyance to Amis, this he has not done. But it is said that Amis took Hamlin's claim at his own risk; this was nothing to the performance of the defendant's part of the contract. If Amis purchased a bubble, it was a matter between him and the plaintiff, and for any deviation in this contract he must be responsible to Amis. It does not appear that the defendant ever had any title to this 200 acres of land which he contracted to convey. It is true that the contract provides an equivalent for the land in case of the defendant's incapacity to convey, being 200l. Virginia currency, but the answer does not assert that this or any part of it, has been paid, so that it appears that no part of the purchase-money has been paid, but only an incidental obligation discharged, the payment of 53l. for rent. This, however, has been refunded, or the defendant is in a capacity of getting it by the dissolution of the injunction.
The present or former circumstances of the lands contracted to be conveyed on either side cannot be taken into consideration by the Court. Whether either or both of the tracts have risen or fallen in value, is not material to a rightful determination. The Court will presume an adequate consideration, unless the contrary appear in a manner which the law will authorize.
In common extrajudicial parlance, one person may be said to get the advantage of another in a contract; but when a contract is fair, this court possesses no legal means of knowing this inequality, and therefore the idea of depriving a party to a contract of any advantage which he may have acquired over the others party cannot be conceived.[1] *Page 47 
It does not appear from this transaction, that the rent was intended to be a substitute for the interest, but rather a stipulated incident of the principal part of the contract, — the conveyance of the 200 acres of land or its substitute, 200l.
The objection which has been raised against the claim of the defendant to the 200 acres of land, from the encumbrance of the sheriff's sale has no weight with me. The sheriff could sell no greater interest than the defendant possessed; a purchaser under that sale must take it subject to all antecedent claims, either legal or equitable.
Upon looking into the bill, it does not appear that the allegation of the insolvency of the defendant is merely by inference as contended, but an independent, substantial charge upon which the plaintiff grounds his case. The evidence proves to the satisfaction of my mind that the defendant is insolvent, that he has never conveyed the land he contracted to convey nor paid the 200l.
Virginia currency, its agreed equivalent; and that he is perfectly incapable of doing it. Seeing that the plaintiff has restored, by a dissolution of the injunction, all that he had received of the defendant for the rent, I am of opinion that the parties should be placed in statu quo, and that the injunction for the balance should be made perpetual. Vide 5 East, 452; 2 Com. Cont. 56; 5 Esp. 499; Doug. 654; Camp. 472, Wils. ed. Bac. Ab. 109 n.
[1] A purchaser is not entitled to any compensation for the fancied goodness of his bargain which he may suppose he has lost. Sugd. 151, and authorities there referred to.